## FIREMAN'S FUND INSURANCE COMPANY v. CLIFFORD CLARK

5-6172                                                      490 S.W. 2d 447

Opinion delivered February 19, 1973

*William Clay Brazil,* for appellant.

*Cambiano & Cree,* for appellee.

GEORGE ROSE SMITH, Justice. In 1967 Clifford Clark, the defendant-appellee, was a livestock dealer doing business in Morrilton. Pursuant to the Federal Packers and Stockyards Act he, as principal, and the plaintiff-appellant as surety, gave a bond by which Clark obligated himself to pay when due all net amounts for which Clark sold livestock for the account of other persons.

Marx Brothers, livestock brokers at Memphis, Tennessee, asserted a claim against Clark for $657.97. Clark denied that he owed the money, but the surety, Fireman's Fund, nevertheless paid the claim in full and brought this action against Clark for reimbursement. The circuit court, sitting without a jury, found the issues in favor of Clark, who was also awarded a $150 attorney's fee. This appeal is from that judgment.

We state the facts most favorably to the trial court's judgment, as is our rule. Marx Brothers first asserted its claim in an administrative proceeding within the United States Department of Agriculture. It was alleged that Clark had sold Marx Brothers' cattle to third persons for $657.97 less than the minimum price fixed by Marx Brothers. The administrative hearing officer upheld the claim and directed Clark to pay it within 30 days.

Clark, denying liability, refused to pay the claim and rejected a Marx Brothers offer to settle it for $300. The attorneys for Marx Brothers then sent Fireman's Fund a copy of the administrative order, with a demand for payment. Clark continued to deny liability, but Fireman's Fund paid the claim in full, over Clark's objections.

At the trial Clark testified to facts indicating that he owed nothing to Marx Brothers. Fireman's Fund made no effort to prove that the Marx Brothers claim was in fact meritorious. Instead, Fireman's Fund introduced the federal administrative order ·and insisted that it was justified in paying Marx Brothers by reason of a provision in the surety bond stating that the surety "in its sole discretion and without notice to [Clark] is hereby authorized but not required . . . to adjust, settle or compromise any claim or suit arising under said Bond and, with respect to any such claim or suit, to take any action it may deem appropriate and any adjustment, settlement or compromise made or action taken by the Surety shall be conclusive against and binding upon [Clark]."

When the bond is read as a whole it is obvious that the langugage just quoted cannot be taken literally, without regard to the rest of the instrument. Clark's primary responsibility under the bond was to pay over money received by him in the course of selling other people's cattle. If he properly discharged that duty he was under no liability to third persons. It goes almost without saying that Fireman's Fund could not seize upon the quoted language in its bond as a means of making Clark liable for a wholly fictitious claim.

Fireman's Fund cites out opinion in *Peay* v. *Southern Surety Co.,* 141 Ark. 265, 216 S.W. 722 (1919), where we construed a somewhat similar bond. We first stated the controlling rules: "Generally, the liability of the principal is the measure of the liability of the surety; so, if the surety should pay where no liability existed against the principal, it would be treated as a voluntary, nonrecoverable payment. This rule, however, may be modified by contract." We went on to say, however, in interpreting language similar to that now before us, that the principal would be liable to the surety "for all good faith payments" made by the surety in absolving itself from claims made against it under the bond. Thus the issue is ultimately one of good faith.

When, as here, the trial judge makes no special findings of fact, we treat the judgment as having the same finality as a jury verdict and sustain it if supported by any substantial evidence. *Norvell* v. *James,* 217 Ark.

932, 234 S.W. 2d 378 (1950). Testing the judgment by that standard, we find sufficient evidence to sustain the view that Fireman's Fund did not meet the standard of good faith in protecting its principal against an adverse claim.

The federal administrative finding in favor of Marx Brothers was not conclusive. Under the controlling statute, if Clark failed to pay the claim Marx Brothers was required to bring suit in the federal court within a year, with the administrative finding being merely prima facie evidence in favor of the claimant. 7 U.S.C.A. § 210 (f) (1964). Hence Fireman's Fund had no absolute right to rely upon the administrative order as a conclusive adjudication. Nevertheless, it chose to pay the claim in full over the objections of its principal and failed to make any showing in the trial court (other than the findings in the administrative order) that the Marx Brothers claim was actually valid. Clark has steadfastly denied any liability to Marx Brothers, even to the point of refusing to settle the claim for less than fifty cents on the dollar. Upon the record as a whole we find substantial evidence to support the conclusion that Fireman's Fund's conduct fell short of a good faith effort to protect the best interests of its principal.

Fireman's Fund is right, however, in its contention that the court erred in awarding an attorney's fee to Clark. Our Insurance Code contains two sections with respect to attorney's fees. The first applies to cases in which the insured recovers a money judgment; so it is not pertinent here. Ark. Stat. Ann. § 66-3238 (Repl. 1966). The following section applies to certain specified cases not involving a money judgment against the insurance company, § 66-3239, but there is no language in the section describing a suit such as this one. The judgment must therefore be modified to eliminate the attorney's fee.

Affirmed as modified, with the appellant to recover its costs pursuant to our Rule 24 (c).