VERN BARNETT CONSTRUCTION COMPANY, INC. *v.* J. A. HADLEY CONSTRUCTION COMPANY, INC. AND MARYLAND CASUALTY COMPANY

73-38                    496 S.W. 2d 446

Opinion delivered July 9, 1973

*Douglas Bradley* and *Jon R. Coleman,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* for appellees.

J. FRED JONES, Justice. This is an appeal by Vern Barnett Construction Company, Inc., hereinafter called Barnett, from that portion of a judgment of the Craighead County Circuit Court which failed to award statutory penalty and attorney's fee against Maryland Casualty Company in a suit by Barnett against J. A. Hadley Construction Company, hereinafter called Hadley, and its bondsman Maryland Casualty Company, hereinafter called Maryland. Hadley and Maryland cross appeal on assigned error of the trial court in refusing their request to open and close the argument to the jury under the contention that they had the burden of proof and were entitled to open and close the argument under Ark. Stat. Ann. § 27-1727 (Repl. 1962).

The facts appear as follows: Hadley was awarded a contract for the construction of a bypass on a highway in Craighead County and in connection therewith entered into a contract with Barnett under which Barnett was to furnish asphalt paving material at a stipulated price and was to apply the asphalt material to the surface of the highway. Maryland was the bonding company for Hadley and agreed to pay such sums as Hadley would fail or refuse to pay for materials and services in connection with the project.

On September 21, 1971, Barnett filed its itemized and verified complaint against Hadley and Maryland alleging balance due on the contract for materials furnished and services performed in the amount of $14,719.64 with accrued interest thereon amounting to a total of $14,934.22. It alleged that Hadley had tendered the sum of $10,300.90 in full settlement of the account but that the tender was refused. The complaint prayed judgment against Hadley and Maryland for $14,934.22 with interest at six per cent. On October 11, 1971, Hadley and Maryland filed their answer admitting the contract and relation between the parties, and admitting that Hadley owed to Barnett the sum of $10,300.90 for which its checks had been issued and would be honored. It denied the other allegations in the complaint. The answer then alleged as follows:

". . . [T]he $4,633.32 difference between the amount claimed by Barnett and the amount tendered by Hadley represents expense incurred by Hadley at the request of the State of Arkansas and for the proper completion of work which was the responsibility of Barnett, and therefore such expense was a proper deduction from any sums due and payable to Barnett.

WHEREFORE, the defendants pray that the complaint of plaintiff be dismissed and that it have its costs and all other proper relief."

On May 16, 1972, Barnett filed an amendment to its complaint stating as follows:

"1. Subsequent to filing suit the defendant, J. A. Hadley Construction Company, Inc., has paid $10,-300.90. Excluding interest, the items in controversy between the parties which constitutes plaintiff's cause of action against J. A. Hadley Construction Company, Inc., and Maryland Casualty Company are as follows:

### COUNT NO. I

Amount deducted from plaintiff's estimate dated August 31, 1971, $2,928.08, with interest thereon at 6% from August 31, 1971.

### COUNT NO. II

Amount deducted from estimate dated November 15, 1969, $1,490.66, with interest thereon at 6% from November 15, 1969.

WHEREFORE, Plaintiff prays for judgment in the total principal sum of $4,418.74, plus interest as hereinabove set out, and for cost including statutory penalty and attorney fee against Maryland Casualty Company."

Hadley and Maryland answered the amendment as follows:

"The defendants, for answer to the amendment to complaint, reiterate and reallege the defenses set forth in the original answer; deny that Maryland Casualty Company as surety on the bond of Hadley is liable for statutory penalty and attorneys' fee as claimed; and deny each and every other material allegation of such amended complaint."

The jury returned a verdict for Barnett for $4,418.72 and judgment was entered thereon together with accrued interest, but Barnett's motion for penalty and attorney's fee was denied. For the purpose of this appeal the parties stipulated as follows:

"1. Open Statements were made first by plaintiff's attorney and second by defendants' attorney.

2. Plaintiff introduced into evidence the contract between the parties (Plaintiff's Exhibit 1) attached, and called as its first witness Vern Barnett who testified as to the contract, and stated that all payments thereunder had been paid except for two items deducted from two estimates prepared by defendant Hadley: (1) the sum of $1,490.66, deducted from estimate dated November 15, 1969, (Plaintiff's Exhibit No. 3) attached; and (2) $2,928.08, deducted from estimate dated August 31, 1971, (Plaintiff's Exhibit No. 4) attached, a total due plaintiff of $4,418.74.

3. Plaintiff rested.

4. Defendant Hadley offered several witnesses alleging plaintiff's failure to finish and clean up his contract work, expenses of defendant Hadley in cleaning up and finishing plaintiff's work, all of which testimony was directed toward justifying the two deductions from the respective estimates. See Defendants' Exhibits 'E' and 'F' attached. Defendant Maryland Casualty Company introduced no evidence separate from its principal.

5. Plaintiff Barnett introduced contradictory evidence in rebuttal to the effect that plaintiff did com-

plete its work according to contract and cleaned up the contract premises after finishing said contract work.

6. Among other instructions, the court at plaintiff's request instructed the jury that Hadley had the burden to prove the debt it contended Barnett owed it before being entitled to the offset.

7. The parties made no objection to the instructions given by the court and requested no additional instructions.

8. Defendants, after all parties rested, requested to open and close the jury argument which was denied by the court, and argument to the jury was first by the plaintiff's attorney, then by the defendants' attorney, and closing argument by the plaintiff's attorney."

Barnett contends on this appeal that the trial court erred in failing to allow plaintiff penalty and attorney's fee as provided in Ark. Stat. Ann. § 66-3238 (Repl. 1966). Hadley and Maryland contend that the court was correct in denying the penalty and attorney's fee because appellant did not recover the exact amount for which it sued and for the further reason that the statute does not apply to the facts in this case. Hadley and Maryland contend on cross appeal, that the trial court erred in refusing their request to open and close argument to the jury since they had the burden of proof. We conclude that the judgment of the trial court must be reversed on the cross appeal; consequently, the point raised on direct appeal is rendered moot and will only be referred to again at the close of this opinion.

The statutory provisions pertaining to the issue on the cross appeal are Ark. Stat. Ann. § 27-1727 and §§ 28-101—102 (Repl. 1962). These sections read as follows:

"27-1727 When the jury has been sworn, the trial shall proceed in the following order, unless the court, for special reasons, otherwise directs:

First. The plaintiff must briefly state his claim and

the evidence by which he expects to sustain it.

Second. The defendant must then briefly state his defense, and the evidence he expects to offer in support of it.

Third. The party on whom rests the burden of proof in the whole action must first produce his evidence. The adverse party will then produce his evidence.

Fourth. The parties will then be confined to rebutting evidence, unless the court, for good reasons, in furtherance of justice, permits them to offer evidence in their original case.

Fifth. When the evidence is concluded, either party may request instructions to the jury on points of law, which shall be given or refused by the court which instructions shall be reduced to writing if either party require it.

Sixth. The parties may then submit or argue the case to the jury. In the argument the party having the burden of proof shall have the opening and conclusion; and if, upon the demand of his adversary, he shall refuse to open and fully state the grounds upon which he claims a verdict, he shall be refused the conclusion.

28-101 The party holding the affirmative of an issue must produce the evidence to prove it.

28-102 The burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side."

In the early case of *Roberts* v. *Padgett,* 82 Ark. 331, 101 S.W. 753, a Mr. Roberts executed and delivered to R. M. Carter a promissory note in payment for an insurance policy which was to be delivered and the note was assigned by Carter to Mr. Padgett. When the insurance policy was delivered to Roberts, he returned it to the company contending that the insurance was misrepresented to him by Carter. Suit was instituted on the note

in Justice of the Peace Court, and no written pleadings were involved, but the defendant orally admitted the execution of the note and for a defense alleged that the note was procured through the fraudulent misrepresentations of the insurance agent and that the consideration for the note had failed. He also denied that the note was transferred to the plaintiff, Padgett, before maturity or that he was a *bona fide* purchaser for value. This court found that the only serious question in the case was whether the trial court committed error in refusing to allow counsel for the defendant to make the opening and closing argument before the jury. After reciting that portion of the statute (now § 27-1727) providing that "in the argument the party having the burden of proof shall have the opening and conclusion," and also citing the statute (now § 28-102) "the burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side," this court said:

> "Now, the promissory note executed by the defendant was the basis of the plaintiff's action. The defendant did not deny that he had executed it, or that it had been assigned to the plaintiff. He undertook to show that it was procured by fraud and misrepresentation, and also that there was a failure of consideration; and he denied that the note had been transferred to plaintiff before maturity, or that plaintiff was a *bona fide* purchaser for value. But, as there was no denial of the execution of the note or its assignment to plaintiff before the action was commenced, it is evident that, had the defendant introduced no evidence, judgment would have been rendered against him, whether plaintiff introduced any evidence or not. It follows from the statute which we quoted that the burden of proof was on the defendant. . . .

The law on this point is thus stated in a recent work:

> 'In all suits on promissory notes, bills of exchange, accounts, insurance policies, or any other form of money demands where the amount claimed is liquidated and can be ascertained without the necessity of proof, the defendant is entitled to open and close the evidence and argument, if he relies for his de-

fense solely on affirmative pleas, as payment, failure or want of consideration or duress, setoff and counterclaim, usury, or other pleas in bar by way of confession and avoidance.' 15 Enc. Plead. & Prac. 194.

This statement of the law is supported by a large number of decisions, and supports the conclusion we have reached in this case. On account of the refusal of the court to allow counsel for the defendant to open and close the argument, the judgment is reversed and a new trial ordered."

In the later case of *Kempner* v. *Stephens,* 186 Ark. 877, 56 S.W. 2d 580, a Mr. Chambers organized a motor oil system corporation and exchanged patents he owned for all of the 25,000 shares of stock in the corporation. He transferred 3,000 shares to Mr. Kempner and took Kempner's note in payment. Chambers was president of the company and Kempner was vice-president and director. A Mr. Duke sold some of the stock to Mr. Stephens and received in payment a check for $1,000 and a note for $1,000. The note was endorsed by Duke and transferred to Chambers. Chambers afterwards transferred the note to Kempner without endorsement. This note was given for stock sold in the corporation and the Blue Sky Law was not complied with. It also turned out that the stock was worthless. Kempner sued to recover on the note and Stephens defended on the ground that the stock was worthless and was sold in violation of the Blue Sky Law. A statute in effect at that time prohibited the sale of stock by any *dealer* or corporation unless the person selling it had complied with the Blue Sky Law. The term "dealer," however, did not include the owner or issuer of such securities or stock who acquired the same for his own account in the usual and ordinary course of business. The fact question, therefore, was whether Duke was a *dealer* in stocks which made him and the stock subject to the Blue Sky Law when he sold it to Stephens. Stephens testified about purchasing the stock and paying $1,000 cash and giving his note and he testified that the stock was worthless. The witnesses for Mr. Kempner contradicted the statements made by Stephens and his witnesses. The jury rendered a verdict for Stephens and on appeal Kemp-

ner, among other assignments, contended that the trial court erred in permitting the attorney for the defendant Stephens to make the opening and closing argument. After quoting the pertinent statute, this court said:

> "The burden of proof in the whole case was on the defendant. He admitted that he paid $1,000 cash and executed his note for $1,000, and the only defense that he interposed was that the stock was sold in violation of the Blue Sky Law. The burden was on him to prove this."

After citing at length from *Roberts* v. *Padgett, supra,* this court in *Kempner* continued:

> "The burden was upon the defendant in the only issues involved in this case, and this fact entitled him to open and conclude the argument. *Columbian Woodmen* v. *Howle,* 131 Ark. 299, 198 S.W. 286.
>
> There was no error in permitting the defendant to open and conclude the argument. The jury was the judge of the credibility of the witnesses and the weight to be given to their testimony, and the finding on these questions is conclusive here."

As already shown in the case at bar, the complaint alleged an indebtedness of $14,719.64 exclusive of interest and by amendment to the complaint alleged that $10,300.90 had been paid on the indebtedness, and there remained a balance of $4,418.74 (exclusive of accrued interest) still due and owing on the account. The answer admitted that $10,300.90 had been tendered in full payment of the account and the answer stated that the difference between the amount claimed and the amount tendered in payment was for additional expenses incurred by the appellee-defendant Hadley in completing the work that Barnett was required to perform and therefore, such expenses were a proper deduction from the sums due and payable to the plaintiff-appellant Barnett. This contention was reiterated in Hadley's and Maryland's answer to the amendment to the complaint.

We can only conclude from the face of these pleadings that Hadley admitted the correctness of the balance due in the principal balance of $14,719.64 under the contract as alleged by Barnett, and the only reason Hadley had not paid the full amount owed was because of set-off Hadley claimed against Barnett in the amount of $4,-418.74 for the additional materials and work Hadley was required to furnish and perform. With the issues thus joined by the pleadings, the stipulation sets out that opening statements were first made by the plaintiff's attorney and second by the defendant's attorney. We are of the opinion that if judgment had been entered at this point, the $4,418.74 difference between the amount claimed by Barnett and the amount tendered and later paid by Hadley, should have been awarded to Barnett in the absence of proof by Hadley that it was entitled to withhold this amount for the materials furnished and work performed and properly chargeable to Barnett as alleged in the answer. According to the stipulation, Barnett introduced into evidence the contract between the parties and Mr. Barnett testified that all payments had been made under the contract with the exception of the two items withheld or deducted by Hadley, and Barnett then rested its case. At this point Hadley and Maryland had admitted in their answer all that the contract and Barnett's testimony tended to prove. If judgment had been entered at this point, it should have been in favor of Barnett for the $4,418.74.

According to the stipulation, the appellee-defendant Hadley then went forward with its evidence toward justifying the two deductions involved, and in rebuttal Barnett introduced contradictory evidence to the effect that it did complete its work according to the contract, such rebuttal evidence tending to disprove Hadley's right to make the deductions.

In final analysis the only question involved was whether Barnett owed Hadley $4,418.74 for services and materials Barnett was obligated to perform and furnish under its contract and this was recognized by the instruction given, without objection, at Barnett's request, to the effect as set out in the stipulation, "that Hadley had

the burden to prove the debt it contended Barnett owed it before being entitled to the offset." We conclude, therefore, that the trial court erred in not permitting Hadley's attorney to open and close the argument to the jury because as we view this case, the defendant-appellees had the entire burden of proof under the pleadings and the evidence in this case. The appellant argues that no prejudice was shown by the trial court's ruling, but we are unable to say that no prejudice was shown when the jury returned a verdict for the full amount sued for, lacking two cents, in this particular case. We conclude, therefore, that the judgment must be reversed and this cause remanded for a new trial.

Since the points raised on direct appeal may arise again at a new trial, we only point out that statutory penalty and attorney's fee in suits against insurers under Ark. Stat. Ann. § 66-3238 (Repl. 1966) are highly penal in nature and the statute should be strictly construed. We note that this statute has been applied to sureties on contractor's bonds by the Eighth Circuit Court of Appeals in *Trinity Universal Ins. Co.* v. *Smithwick,* 222 F. 2d 16 and *Reid* v. *Miles Construction Corp.,* 307 F. 2d 214, where the sureties contended that proper demand to justify allowance of penalty and attorney's fees had not been made. The appellees argue, with some persuasive force, that the surety should not be penalized under this statute when its principal, a general contractor, has not been found liable or unable to pay and is asserting a good faith defense to this action. This argument may be meritorious in a case in which the surety does not itself contest the claim, but acknowledges that its liability is contingent upon a determination that its principal was, or is, liable. We have held that a surety who pays a claim against its principal before final adjudication of the principal's liability, over the principal's objection, cannot recover from the principal without showing that it made a good faith effort to protect the principal against the adverse claim. *Fireman's Fund Ins. Co.* v. *Clark,* 253 Ark. 1025, 490 S.W. 2d 447. In that case, we found support for a judgment denying recovery to the surety in its failure to show that the claim was actually valid and meritorious. Applying this statute to a surety so the surety

must either pay a claim and align itself against its principal or run the risk of being penalized by a liability for a 12% penalty and attorney's fees seems to be beyond the salutary purpose and intent of the statute. But this is not such a case. Here both principal and surety joined in all pleadings and the allegations, admissions and denials contained in them. Neither filed a separate pleading or made any separate allegation. Even the notice of cross-appeal is joint. As far as this record discloses, the surety opposed appellant's claim as vigorously as the principal did. We are not willing to say that the statute does not apply under the circumstances prevailing here.

As to the appellees' further argument on the point relied on by the appellant, see *Smith* v. *U.S.F. & G. Co.*, 239 Ark. 984, 395 S.W. 2d 749, and cases there cited, as well as the recent case of *Southwestern Ins. Co.* v. *Camp*, 253 Ark. 886 (1973), 489 S.W. 2d 498.

The judgment is reversed on cross-appeal and this cause remanded for a new trial.

BYRD and HOLT, JJ., dissent in part.

CONLEY BYRD, Justice, dissenting. I concur in the reversal of this judgment but disagree with so much of the opinion as suggests that a "good faith defense" prevents the assessment of a penalty and attorney's fee under Ark. Stat. Ann. § 66-3238 (Repl. 1966). That statute in so far as is here applicable provides:

"In all cases where loss occurs and the cargo, fire, marine, casualty, fidelity, surety, cyclone tornado, life, health, accident, medical, or surgical benefit insurance company. . . liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such person, firm, corporation and/or association shall be liable to pay . . . in addition to the amount of such loss, twelve per cent (12%) damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss;. . ."

An identical statute was involved in *Missouri State Life Insurance Company* v. *Brown,* 188 Ark. 1136, 69 S.W. 2d 1075 (1934). We there held that when the exact amount sued for was recovered, the insurance company was liable for the 12% penalty and attorney's fee and that the good faith of the insurance company did not excuse it from the plain provisions of the statute. In doing so the court relied upon *Life & Casualty Ins. Co. of Tenn.* v. *McCray,* 187 Ark. 49, 58 S.W. 2d 199, 291 U.S. 566, 54 S. Ct. 482, 78 L. Ed. 987 (1934).

I take the language of the majority opinion as being a caveat that those decisions will be considered anew. I do not agree with that suggestion. If that is not the suggestion made by the majority, then I am at a loss to understand how a different rule under the same statute can constitutionally be applied to a surety company without unlawfully discriminating among other members of the same statutory class.

Because of this disagreement with the majority, I can only concur in the result.

HOLT, J., joins in this dissent.